## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.: 7:13-cv-00547-LSC |
| | ) ) | |
| BRICE BUILDING COMPANY, LLC | ) ) | |
| Defendant. | ) | |

_____

## RESPONSE TO SHOW CAUSE ORDER
_____

COMES NOW, The Hanover Insurance Company ("Hanover") and files its

Response to the Court's Show Cause Order as follows:[1]

## INTRODUCTION

This matters arises from Brice Building Company, LLC's ("Brice") breach of

a subcontract performance bond (the "Bond") Hanover issued to its principal, Atlantis

Drywall & Framing, LLC ("Atlantis"), for work Atlantis performed on a project

---

[1] This response also serves as Hanover's response to Brice's Motion to Stay and Enforce Arbitration, should one be required.

known as UA North Bluff Residential Community (the "Project"), located in Tuscaloosa, Alabama. Brice was the general contractor on the Project and Atlantis was a subcontractor of Brice.

A dispute developed between Atlantis and Brice during construction, which resulted in Atlantis discontinuing its work on the Project prior to completion. Atlantis cited many reasons for discontinuing its work on the Projects including Brice's improper supplementation of Atlantis' work, Brice's failure to pay for work in place, improper scheduling, and out of sequence work. The dispute between Atlantis and Brice is not the subject of these proceedings. In fact, Brice has taken no action against Atlantis to date.

The Bond requires that, whenever Atlantis is in default and is declared to be in default by Brice, Brice must notify Hanover and allow it to elect its remedy under the Bond. Brice neither properly declared Atlantis in default nor allowed Hanover to elect its remedy as the Bond requires. Instead, in direct violation of the conditions precedent contained in the Bond, Brice completed the Project and now demands that Hanover indemnify it for its alleged completion costs in excess of $2 million.

Under Alabama law, Brice's failure to comply with the conditions precedent in the Bond render Hanover's obligations null and void.[2]   As set forth fully below, the claims asserted in this matter are completely unrelated to any dispute between Atlantis and Brice under the subcontract.   Accordingly, this matter is not subject to the narrow arbitration agreement contained in the subcontract between Brice and Atlantis (the "Brice/Atlantis Subcontract"), and Brice's Motion to Compel Arbitration should be DENIED.

## ARGUMENT

Brice argues in its Memorandum in Support of its Motion to Stay and Compel Arbitration that "[b]ecause the Bond expressly incorporated the subcontract containing a binding and enforceable arbitration provision," Hanover should be compelled to arbitrate its surety defenses.[3]   This reasoning does not follow Alabama law.   Hanover does not dispute that the Bond it issued to Atlantis incorporated by reference the Brice/Atlantis Subcontract.   Hanover does not dispute that the Brice/Atlantis Subcontract contains a binding and enforceable arbitration provision. The question before this Court is to whom does the arbitration provision apply?   The

_____

[2]  See Bank of Brewton v. International Fidelity Ins. Co., 827 So.2d 747, 752 (Ala. 2002); see also Fidelity & Deposit Company of Maryland v. Jefferson County Commission, 756 F.Supp.2d 1329, 1335 (N.D. Ala. 2010).

[3]  See Memorandum of Law in Support of Motion to Stay and Compel Arbitration, Document 8, at page 2.

arbitration provision is specific, applying only to disputes between the parties to the Brice/Atlantis Subcontract. Therefore, it does not encompass Hanover's claim that Brice breached the terms of the Bond.

When considering a motion to compel arbitration, Alabama courts employ a two-step inquiry. First, the court must determine whether the parties agreed to arbitrate that dispute.[4] Alabama law states that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[5] In determining whether the parties agreed to arbitrate a particular dispute, courts consider "(1) whether there is a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement."[6] Therefore, if the arbitration provision in the Brice/Atlantis Subcontract does not encompass Hanover's claim that Brice breached the Bond, Hanover cannot be compelled to arbitrate the dispute.

The arbitration provision contained in the Brice/Atlantis Subcontract states:

_____

[4] See Shores of Pan., Inc. v. Safeco Ins. Co. of Am., 2008 U.S. Dist. LEXIS 75956, *10-11 (S.D. Ala. Sept. 29, 2008); see also Patriot Manufacturing, Inc. v. Dixon, 399 F. Supp 2d 1298, 1300 (S.D. Al. 2005); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

[5] Shores of Panama, 2008 U.S. Dist. LEXIS at *10 (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

[6] Id. at *11; see also Hudson v. Outlet Rental Car Sales, Inc., 876 So.2d 455, 457 (Ala. 2003).

Paragraph CC. The parties acknowledge and agree that this Subcontract and the subject matter hereof is substantially connected with and involved with interstate commerce. In the event of a dispute(s), claim(s) or other matter(s) in question of any kind whatsoever between the parties (i) arising out of or related or collateral to the provisions and/or subject matter of this Subcontract or the breach thereof, or independent from the Subcontract or (ii) relating to any transaction or occurrence of any kind between the parties to this Subcontract or their officers, directors, agents and/or employees, it is agreed that the parties to this Subcontract will attempt to resolve such dispute(s), claim(s) or other matter(s) in question amicably by informal discussions and negotiations with a seven (7) day period. Notwithstanding any conflicting or contrary provisions contained within the General Contract nor any provision in this Subcontract that incorporates herein the terms and conditions of the General Contract by reference, all dispute(s), claim(s) and other matter(s) in question which cannot be settled by negotiation among the parties within such time shall at the election of the Contractor (but not otherwise), be submitted by the parties to arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association except as such rules may be modified or restricted by any provision of this Subcontract. The parties intend that the scope of this arbitration clause shall be construed as broadly as possible so as to include, but not be limited to, the enforceability of this arbitration provision, the arbitrability of a particular claim or dispute, as well as any claims of misrepresentation, concealment of material facts, or fraud among the parties whether occurring before or after the execution of this agreement.

Brice cannot dispute that the parties referenced in the agreement are the parties to the Subcontract, Brice and Atlantis. Under the clear terms of the arbitration agreement, the only claims to which the arbitration provision applies are claims between Brice and Atlantis.

Brice claims that the arbitration provision is "sufficiently broad so as to

encompass claim arising solely out of the Bond obligations" because "it requires arbitration of 'claim(s) . . . arising out of or related or collateral to the provisions and/or subject matter of the Subcontract or breach thereof.'"[7]  Brice's statement here is not entirely accurate as it omits the operative phrase "between the parties," which is paramount in determining the scope of the arbitration provision.  In reality, the pertinent portion of the arbitration provision states that the following shall be arbitrated:

> dispute(s), claim(s) and other matter(s) in question of any kind whatsoever **between the parties** (i) arising out of or related or collateral to the provisions and/or subject matter of this Subcontract of the breach thereof, of independent from the Subcontract or (ii) relating to any transaction or occurrence of any kind **between the parties to this Subcontract** or their officers, directors, agents and/or employees."

Brice agrees that the language above defines the scope of the agreement.[8]  As a simple reading of Hanover's Complaint for Declaratory Judgment evidences, the claims before this Court do not involve Atlantis, the Brice/Atlantis Subcontract , or claims between Brice and Atlantis.  This matter involves Brice's breach of the conditions contained in the Bond.  As such, these claims are not encompassed in the arbitration agreement. Therefore, Hanover did not agree to arbitrate this dispute and

---

[7]  See Memorandum of Law in Support of Motion to Stay and Compel Arbitration, Document 8, at page 6.

[8]  Id. at page 2.

should not be compelled to do so.

Brice cites several cases in support its contention that Hanover must arbitrate the disputes in this matter. These cases are distinguishable from the facts at hand. Brice cites <u>Employers Ins. Of Wausau v. Bright Metal Specialties, Inc.</u> in support of its argument that by the bond's incorporation of the contract by reference, sureties are required to arbitrate their disputes.[9]   <u>Employers Ins. Of Wausau</u> does not support Brice's contention. In <u>Employers Ins. Of Wausau</u>, the court held that since the surety "stepped into" the shoes of its contractor and executed a ratification agreement with a subcontractor, the surety expressed its intent to arbitrate disputes with the subcontractor in accordance with the arbitration provision contained in the subcontract.[10]   The facts in <u>Employers Ins. Of Wausau</u> have no similarities with the facts here, and as such <u>Employers Ins. Of Wausau</u> should be disregarded.   It bears noting, however, that while <u>Employers Ins. Of Wausau</u> in a case interpreting Florida law, and is not binding, Florida law parallels Alabama law insofar as Florida law also dictates that "no party can be compelled to arbitrate unless that party has entered into

---

[9]  <u>See</u> <u>Memorandum of Law in Support of Motion to Stay and Compel Arbitration</u>, Document 8, at page 5.

[10]  <u>Employers Ins. Of Wausau v. Bright Metal Specialties, Inc.</u>, 251 F.3d 1316, 1323 (11th Cir. 2001).

an agreement to do so."[11]

The other cases relied upon by Brice are distinguishable because the arbitration agreements contained therein are much different from and broader than the arbitration provision in the Brice/Atlantis Subcontract.  These cases contain virtually identical general arbitration provisions, which state that all claims, disputes, controversies and matters in question arising out of or related to the Contract or the breach thereof, shall be settled by arbitration.[12]  This is much different from the arbitration provision in the Atlantis/Brice Subcontract as the provision in the case at hand is much narrower, specifically limiting arbitration to all claims between Brice and Atlantis.  As the claims brought in the complaint for declaratory judgment are not claims between Brice and Atlantis, they are not subject to the arbitration provision.

Furthermore, in Shores of Panama, a case not cited by Brice but one which this Court should be made aware, the United States District Court for the Southern District of Alabama ruled on a surety's obligation to arbitrate when the contract contains a broad, general arbitration provision such as those in Transamerica Premier Ins. Co. and Hinkle Contracting Co.  In Shores of Panama, the Court held that, in

---

[11]  Employers Ins. Of Wausau, 251 F.3d at 1321.

[12]  See Transamerica Premier Ins. Co. v. Collins & Co., Gen'l Contrs., Co., 735 F. Supp. 1050 (N.D. Ga 1990); Great American Ins. Co. v. Hinkle Contracting Co., Slip Copy 2012 WL 5936178 (4th Cir. 2012).

instances where a bond incorporates by reference a general and very broad arbitration provision stating that "any controversy or claim arising out of or related to the Contract or breach thereof, shall be settled by arbitration," a surety is obligated to arbitrate its defenses. However, the Court's ruling in <u>Shores of Panama</u> is only limited to arbitration provisions that broadly encompass all claims arising out of or related to a contract or breach thereof.[13] As the Arbitration provision in the Brice/Atlantis Subcontract is much more restrictive than the <u>Shores of Panama</u> provision, and while the analysis the Court employed is on point, the holding is not applicable due to the differences between the arbitration provisions.

While Alabama courts have not analyzed an arbitration provision similar to the one in the Brice/Atlantis Subcontract, Maryland has and held that this language serves to exclude arbitration of a surety's claims. In <u>Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates Limited Partnership</u>, the Court of Appeals of Maryland upheld the lower appellate court's ruling that an arbitration provision almost identical to the one in the Brice/Atlantis Subcontract precluded the surety from arbitrating its claims against the obligee.[14] In <u>Scarlett Harbor</u>, Scarlett Harbor

---

[13] The <u>Shores of Panama</u> arbitration provision stated that "Any controversy or Claim arising out of or related to the Contract or the breach thereof, shall be settled by arbitration. . ."

[14] <u>Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates Limited Partnership</u>, 346 Md. 122 (Md. 1997).

Associates Limited Partnership ("SHALP") entered into a contract with Kraus Co., Inc. ("Kraus") to furnish and install metal framing and Gypsum sheathing on a large residential condominium project. The SHALP-Kraus contract contained an arbitration provision that stated:

> All claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.[15]

The contract between SHALP and Kraus required that Kraus obtain a performance bond, and Krause obtained a bond from Hartford. The bond incorporated the SHALP-KRAUS by stating that the contract is "by reference made a part hereof."[16] SHALP was sued in Circuit Court for Baltimore County, and it impleaded both Kraus and Hartford into the lawsuit. Arguing that the arbitration provision in the SHALP-Kraus contract obligated SHALP to arbitrate any disputes with Kraus and Hartford, both moved to compel arbitration.[17] The circuit court granted Kraus' motion to compel arbitration, but denied Hartford's.

On appeal, Hartford argued, as Brice argues here, that the arbitration provision

---

[15] Id. at 124.

[16] Id.

[17] Id. at 125.

was clear, and that by incorporating the SHALP-Kraus contract into the bond, the parties clearly showed their intention for arbitrating claims under the bond. The Special Court of Appeals agreed with the circuit court holding that the language excluded arbitration of the surety's claims, and the Court of Appeals of Maryland granted Hartford's petition for certiorari. In affirming both lower court's decisions, the Court of Appeals recognized the narrowness of the arbitration provision by stating "the SHALP-Kraus contract contains a provision whereby those two parties agree to arbitrate with each other, and that is the agreement that the circuit court enforced."[18]  The Court further explained the effect of the bond's incorporation of the SHALP-Kraus contract by reference by stating:

> By incorporating into the bond in the instant matter the contract that contains SHALP's promise to arbitrate with Kraus, The Hartford literally has incorporated as to SHALP only SHALP's promise to arbitrate with Krause. The bond does not, by its terms, express any enlargement of the obligations of the obligee, and, even if The Hartford, acting unilaterally, or The Hartford and Kraus, acting by agreement, undertook to enlarge the obligations of SHALP under its contract with Kraus, that attempted enlargement ordinarily would be ineffective.[19]

Because SHALP and Hartford did not agree to arbitrate disputes between themselves, the Court denied Hartford's appeal.

---

[18] Id.

[19] Id. at 128.

The arbitration provision in the Atlantis/Brice Subcontract is almost identical to the arbitration provision in Scarlett Harbor. As Alabama has not analyzed an arbitration provision similar to the one here, this Court should look to Scarlett Harbor for guidance in its analysis. Here, the arbitration provision clearly states that only disputes between Atlantis and Brice must be arbitrated by the inclusion of the phrase "between the parties." Brice drafted the Subcontract and the arbitration provision contained therein, and it could have drafted a broad, general provision that encompassed the claims Hanover asserted in this action. However, Brice did not draft such a provision and should not be allowed to conform the arbitration provision in the Brice/Atlantis Subcontract into something it is not because it does not want to be under the jurisdiction of this Court. Therefore, Brice's Motion to Stay and Compel Arbitration should be DENIED.

This the 6th day of _ May _, 2013.

Respectfully submitted,

KREBS, FARLEY & PELLETERI, PLLC

*/s/ Alec M. Taylor*
BRIAN DODD, ASB-5193-D56B
ALEC M. TAYLOR, ASB-0501-C63
*Counsel for The Hanover Insurance Company*

OF COUNSEL
Krebs, Farley & Pelleteri, PLLC
1950 Stonegate Drive, Suite 225
Birmingham, Alabama 35242
(205) 968-4009 Telephone
(205) 968-7343 Facsimile
bdodd@kfplaw.com
ataylor@kfplaw.com


## CERTIFICATE OF SERVICE

I, Alec M. Taylor, do hereby certify that on this day, I served a copy of the

foregoing pleading, via the court's electronic filing system on the following:

Mr. Bill Purdy
Bradley Arant Boult and Cummings
One Jackson Place
188 E. Capitol Street
Suite 400
Jackson, MS 39201
*Attorney for Brice Building Company, LLC*


This the 6th day of __May__, 2013.

__/s/ Alec M. Taylor__
Alec M. Taylor